Thank you, Your Honor. Good afternoon. May it please the Court. My name is Hilary Hahn and I represent the petitioner. With me at council table is my co-counsel, Bart Klein. And if I may, I'd like to reserve five minutes for rebuttal. In enacting the corroboration provisions of the REAL ID Act, it was Congress's intent to codify the Board of Immigration Appeals decision in matter of SMJ. In matter of SMJ, the Board discussed the corroboration requirements in an asylum case of length, and in particular discussed the roles and responsibilities of the various parties in an asylum case. That is, the roles of the asylum applicant, the trial attorney, and the immigration judge, vis-à-vis that corroboration requirement. And the three-part analysis of the corroboration requirement in the REAL ID Act that Judge Berzon discussed in her dissenting opinion, in which we're asking the Court to adopt today, derives directly from matter of SMJ. Did you raise this argument at all before the BIA? This argument wasn't, this particular argument wasn't raised before the BIA. So why would be, how can we be reviewing it if it hasn't been addressed by the BIA in the first instance? We believe that Mr. Singh did adequately address this issue before the immigration, before the, addressed his, exhausted his administrative remedies before the agency. Well, if it wasn't presented to him and it really wasn't articulated until Judge Berzon's dissent at the panel level, why would we be wading in to interpret SMJ and the statute before the BIA has given some kind of reasoned analysis of it? Well, I think the Board did address the, did address the issue. They addressed the issue of which statute applied. Well, that's true, but isn't your focus now really heavily focused on whether or not he had the opportunity to explain why he couldn't give any corroborating evidence? Yes. And the Board's, the Board's decision was that in this particular case, the immigration judge could require corroboration. Counsel, I don't read the BIA's decision that way exactly. In the sense that the, and this also would be a reason not to look at the corroboration requirement. I read the decision of the agency to be that the petitioner had, or the respondent below, had failed to meet the burden of proof, which is by clear and convincing evidence with regard to the evidence that was presented. And then they went through and analyzed why the things that were presented were not clear and convincing. But it didn't really say we're making a decision because you didn't bring something else. They really were deciding that what they did bring wasn't enough. Why is, why does that even call into play the corroboration requirement? Well, first of all, I don't think that either the immigration judge or the Board considered any corroboration with regard to the date of arrival. There was a document in the record, a letter, that showed that Mr. Singh was in Uttar Pradesh, India in August of 2004. And the Board never addressed that document at all. But I do think that the Board, in its decision, found that it was proper for an immigration judge to require corroboration of otherwise credible testimony. But I guess what I'm saying is I don't see where the immigration judge did require corroboration. I agree. I don't think the Board, I don't think the immigration judge did either. The immigration judge simply said, based upon the respondent's testimony, I don't find that he's met his burden of proof. So why don't we go back earlier than that? If you go back in the statute to 1158A.2, where you have the clear and convincing standard, My question is whether B applies at all to that aspect of the immigration proceeding. Because that is almost a pre-application. You need to meet the clear and convincing standard on that point before you then have the judge determine your eligibility as a refugee or otherwise under B. So I'm wondering whether it's inappropriate under any circumstances to try to shoehorn B into A. Well, I agree. And this is an argument we did make in our supplemental briefs, that Section 1158B.1b doesn't apply to the – to establish – the corroboration requirement in that subsection doesn't apply to the determination of whether somebody has corroborated his or her date of arrival into the United States. So, yes, I don't think that that's the applicable statute. But I do believe that Section 1229A.C.4.B. does apply because it's more of a general statute. It's sort of a catch-all provision that requires corroboration. There isn't any other relief, though, right? Including – There isn't any other relief. This is kind of like Block 1 of the asylum process. Right. Well, it includes protection from removal. And so I think that, you know, given that it applies more generally in removal proceedings and it discusses protection from removal, I think it's an appropriate subsection to look at because I do agree that 1158B doesn't strictly apply. Let's just leave aside whether you're right or wrong about this second one with removal. If the only section that really applied here is 1158A, I thought you said that the immigration judge found by current contingency evidence at your point didn't meet that standard. If that's the only statute that applies, wouldn't we just be benchmarking our appeal against that whether there is some error in that? Well, I think maybe if the immigration judge's decision had been adopted in its entirety by the board, but the board went on to say that an immigration judge can require corroboration of otherwise credible testimony. So it applied the corroboration requirement to Section 1158A. So I think that that is now before the court. Hypothetically, if A is the only applicable section, then the remedy would be to say for the board to go back and just do it solely under A and not import B? Yes. And I think that the proper statute to have applied is actually 1229AC4B. But if the court were to find that under 1158B1B corroboration, the three-part analysis isn't required, then I think remand is appropriate. Let me ask you this. Do I understand correctly that an immigration officer informed Mr. Singh well before his hearing before the immigration judge that he had failed to establish his date of entry and that he needed corroborative evidence? And why did that not put him on notice that he needed corroborative evidence at this specific date? Sure. And that refers to the Asylum Officers Assessment, which is at page 275 of the administrative record. There's a paragraph devoted in that assessment to the issue of the date of entry. That paragraph speaks almost entirely about Mr. Singh's testimony and problems with Mr. Singh's testimony. There's one sentence about corroborative evidence, but there's nothing in there that says specifically that the claim was denied because of lack of corroborative evidence. And, in fact, if you read the paragraph in total, I think that the fair reading of it is that his credibility was at issue, that his testimony failed. Beyond that, I don't think that that's proper notice in a removal proceeding, because these are de novo proceedings in which an immigration judge becomes the trier of facts. Well, I guess what corroborative evidence does Mr. Singh have? I've never heard anything yet. So what would he present on remand? Well, first of all, there is a corroborative document in the record that neither the immigration judge nor the board ever addressed. And that's the letter showing that in August of 2004, he was in a different part of India. He was in Uttar Pradesh, India. That's a document which, even though it doesn't definitively prove that he filed his application within one year of his date of arrival, it certainly tends to strengthen his testimony. That's already in the record, right? It's in the record. So what else does he have? So, I mean, we're talking about, you know, we're going to create all this case law, and then there's nothing else out there. Well, first of all, on remand, I think the agency needs to consider the document that he did submit. But I think, first of all, and the other thing that Mr. Singh can do on remand is explain why he doesn't have particular documentation that he was asked about, because he was never given the opportunity to do so. And there's certainly – So what would he say? Well, we don't know for sure. Judge Callahan's question is really, are we talking about anything more than a hypothetical here? There's been plenty of time for him to come up with something to say. What would it be? Sure. Well, I mean, I can substitute myself for him, and I can say that with regard to why he doesn't have any evidence or why he doesn't have the documents that he used to enter Canada, it's because he was smuggled into the country with a false passport. Why he doesn't have evidence that he was in Canada for 10 days is the same thing. He was smuggled, and he was under the auspices of a smuggler. Why he doesn't have proof of his entry into the United States is because he entered without inspection. There are no documents to prove his admission. But I will say that there could be other documents that he could use to support his testimony. For example, he might be able to get an affidavit from somebody who he met shortly after entering the United States who could corroborate the fact that he told them, at least, that he had just entered Canada. But we're still talking about Mike. It's the same burden from day one, corroboration or not. So it seems somewhat unusual to say he hypothetically might put something else on the record when on day one he knew this was really his special burden. Right. Well, we believe that the immigration judge in these proceedings had a particular burden to notify him of the documents that he needed to submit. And I think this derives from the board's decision in the matter of SMJ. Could I ask you what you mean by advising about what documents? If you look at the part of the statute that deals with corroboration, the sustaining burden, the two little I section, it says, where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided. I read that to mean only that the obligation of the trier of fact is to say, I have determined that you should provide corroborative evidence, but not specifically to say it has to be this affidavit or that, but just that you're on notice that you're going to need to provide corroborative evidence. Right. And in this particular case, Mr. Singh, wasn't. The immigration judge never noticed. I was maybe confused by your comment that it had to be specific. Well, I think that, yeah, I agree. I don't think the immigration judge needs to particularly focus on any particular document, but I think the immigration judge, at least by statute, has to notify an applicant that a particular evidentiary point needs to be corroborated. I would focus on the very language that Judge Graber quoted to you because to me it doesn't say what the saying says. It seems to be a directive to the petitioner and not a directive to the I.J. It does not say if the I.J. doesn't find him credible and wants corroborative evidence, got to give him notice of the need to provide corroborative evidence, which is a way I would phrase it if I were writing the statute. And this doesn't quite say that. What it says is if he gets a directive, he's got to come up, he's got to, from the I.J., it's something that compels petitioners to do something. It doesn't seem to compel the I.J. to do anything. And how do we get to the interpretation which you are offering and Judge Berzan in favor? Sure. In a couple of ways. First of all, the requirement to submit corroborative evidence is conditional upon the trier of fact determining that it's necessary. And that makes sense because even under the Real ID Act, credible persuasive and specific testimony is sufficient to meet one's burden of proof. So an immigration judge might determine that particular testimony needs to be corroborated, but doesn't have to. So because the statute gives the immigration judge such leeway, the immigration judge has a burden of notifying. It doesn't say burden. It doesn't say the I.J. has got to do anything. What it says is petitioners have got to do something if the I.J. asks. I don't see where in that sentence it says the I.J. must give notice or must make a request. Well, like you said, if the immigration judge asks. I mean, the immigration judge needs to ask for that documentation if the immigration judge thinks it's necessary. It doesn't say that. It doesn't say that the I.J. has to think it's necessary. It doesn't say that an immigration judge has to say it has to ask. The only person that's being directed to do something by that sentence is a petitioner. And what it says is the petitioner has got to do something if the immigration judge asks for something and if it's possible. Right. And if he's not able to, then I guess he needs to. I take it if the trier of fact determines that it is needed, then he will in so doing provide the notice that you're talking about. Right. And the opening sentence says that the testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration. Later on in the section, it says if the prior fact I assume is the I.J. in this case. Right. Makes a determination in that sequence, then he would inform the petitioner or his counsel that corroboration is required or an explanation is required. Counsel, suppose the I.J. doesn't come to the conclusion that he needs any corroborating evidence until he's read all his notes and read all the evidence and he's at home working late. And then he says, I think I need some corroborating evidence. Your view of the statute 13-1229A would require him to pick up the phone and convene the parties again for a second hearing. Well, presumably in that situation, there would be another hearing scheduled. Presumably. On what basis do you say presumably? Statute doesn't require that. Well, if an immigration judge hasn't made a decision, ordinarily an immigration court case stays on calendar until the decision has been made. So in those situations, in most cases, the case would have been adjourned for the immigration judge to make a decision at a continued hearing. So in that situation, the judge could issue an interim order, for example, requesting particular corroborative evidence. But is he required to? I think that if the immigration judge. That's a requirement to follow up on Chief Judge Kaczynski's question for any action by the immigration judge. I think the requirement of the immigration judge derives from matter of SMJ, which was codified. That was a pre-Real ID Act case. It was a pre-Real ID Act case, but the Real ID Act explicitly codified matter of SMJ's corroboration requirements. So I think matter of SMJ is incredibly important in this particular case. And in matter of SMJ, the board said that an immigration judge has the responsibility to make sure that an applicant's explanation for a lack of corroborative evidence is included in the record. The opportunity to explain why particular evidence isn't in the record presupposes that the applicant knows what that evidence is. And so because every applicant knows what supporting evidence he or she has submitted, if you don't have any corroboration, you know that and can offer the explanation. Right. Yeah, but because the immigration judge has a special obligation under SMJ to, I mean, the obligation is on, the responsibility is on the immigration judge under the board's decision in SMJ. I don't understand why we even need the board's decision. I'm still looking at the statute. And the obligation or opportunity for the applicant to corroborate arises only, quote, where the trier of fact determines that the applicant should provide evidence, end quote, that is corroborative. And I guess I have a hard time reading that as meaning that the I.J. secretly determines this in his head, and then somehow it has to be provided. It seems to me that contemplates some act by the trier of fact in determining that the applicant should provide evidence. So I'm not really sure why we need to go beyond the statute. Right. And I think that's particularly true given the universe of potential things that might need to be corroborated in any one particular time. Well, why isn't the answer to that question? Because the burden is on the applicant. And the I.J. has no stake in this. He says, you know, I don't need corroborative evidence because I don't have a stake. You know, you lose. It's fine with me. Why isn't the burden, the fact that the petitioner has the burden, the driving force here, and the petitioner can provide corroborative evidence if he chooses to or not, or the I.J. requires it, he must provide it. But why isn't that up to the petitioner? Well, the burden is on the applicant to present the evidence or if he's asked about it or if she's asked about it. But if the applicant doesn't know what the evidence is, there's no way to meet that burden. I'm sorry. The applicant is the one that has to prove his case. So he knows what the evidence is. And if he has corroborative evidence, presumably that would be part of his way of making out this case. If the date of admission is more than 365 days past the date of the asylum application, then he would know that he needs to show why it's more than a year. And if he has corroborative evidence, presumably he's not barred from bringing it, right? He doesn't have to have a written invitation, engraved invitation, to provide corroborative evidence. Nothing stops him from presenting it, right? That's certainly true. So why isn't his burden, the fact that he carries the burden, enough of a directive? Well, again, because the structure of the statute makes the requirement to present corroborative evidence contingent on a triary fact determination. What part of the statute are you? I'm speaking of the first clause, where the triary fact determines that the applicant should provide evidence that corroborates otherwise credible testimony. So the burden to submit the evidence doesn't kick in until the triary fact has made the determination that that evidence should be corroborated. Can't that be read as imposing upon the applicant the risk of failing to carry his burden of proof if the immigration judge finds that his credible testimony requires corroboration? He doesn't have to be tipped off. He has to take that risk when he shows up for trial that day. Well, first of all, I think that a couple of things. First, I do think it's conditional language. But beyond that, I think that the last clause of the sentence, because there is an exception to having to provide corroborative evidence, and that's where the applicant doesn't have the evidence and can't reasonably provide the evidence. He can prove that at the hearing. He can say, I don't have any corroborative evidence for these reasons. Right. But the applicant can't prove that if they don't know what evidence in particular is being talked about. Well, the only evidence here is what day he came in. He could have snuck in across the border and gone to Burger King or to Motel 6 and slept that night and had a receipt which was time dated. So there's a possibility of corroborative evidence. He didn't bring that at all with him. Well, he did take corroborative evidence to the hearing. Well, the only evidence is that he was in Upper Dash. Right. How does that get him to Canada and the United States? Well, corroborative evidence doesn't have to be determinative as to an issue. Corroborative evidence tends to strengthen one's testimony. And his testimony was that in August of 2004, he was, first of all, outside of the United States, and secondly, was outside of the Punjab where he lived. And in this Court's decision in Cunaverdience, the Court held that you don't have to precisely prove your date of arrival into the United States as long as you can show that within the one year before you filed your application, you were outside of the United States. So your position is that anything that could conceal or be corroborative has to be accepted by the IJA judge? He has no ability to discern what is good or bad? No, I'm not saying that. I'm saying that the immigration judge and the board need to at least consider the evidence. They didn't do that in this case. The board said that there was a lack of corroborative evidence, but didn't even discuss that particular document. And I think at a minimum they need to do that. Was he found credible? He was found credible as to his underlying, the merits of his asylum claim. With regard to his testimony regarding his date of arrival, neither the immigration judge nor the board made explicit credibility findings. And, again, I think that's a problem because credible, persuasive, and specific testimony can suffice to meet one's burden of proof. And I think the immigration judge and the board – Can they ask for the asylum date? Yes, they can. I mean, the credible testimony – The absence of finding of credibility, then he's deemed credible, correct? There is a rebuttable presumption under the REAL-ID Act that he's credible, yes. But, in other words, under your theory, you would make every I.J. actually have to make specific information. You're credible, you're not credible, therefore I need A, B, and C to get you further down the road in this claim. I think the statute – And you would have almost bifurcated proceedings, wouldn't you? No, I think that the statute requires the immigration judge to make an evaluation of the testimony because credible, specific, and persuasive testimony can meet one's burden of proof, even without corroboration. So I think an immigration judge needs to make that evaluation first before determining whether corroboration is necessary. It can all be done in the same procedure. Well, but it seems to sort of defy the nature of what we do as judges when people come in front of us because you can, on the one hand, not think someone's a liar, but they still didn't prove something to you. And so you wouldn't be making an adverse credibility finding, but by the same token, it's, well, I don't have any reason to disbelieve you, but you still haven't met your burden of proof. And so the way that you're parsing this out really kind of defies how things come in. And I think also, as some people have raised, you don't necessarily get a do-over. And when you know what the issues are, why don't you bring your best game? Right. I mean, it's like, well, you don't know you're going to be found credible. The judge might, you know, and also, too, when you decide whether someone's credible, it also has to do with what else out there seems to support what they're saying, not just that they said it, but that other things come into line. And a lot of times, being found adversely credible, you know that it's because you have nothing other than your word. Right. Well, responding to your first point, I agree that under the REAL ID Act, a credibility determination isn't determinative of whether somebody has met his or her burden of proof. But the statute still contemplates, and this court said so in Auden, that credible, specific, and persuasive testimony can meet one's burden of proof with that corroboration. But it's all almost in abstract here, because to this day, he has nothing other than what he already had. And why couldn't that be that he just didn't meet his burden of proof? Well, that might be the case, but the immigration judge and the board have to make that determination first. They have to evaluate that testimony first. And they need to, if he doesn't provide particular documents, they need to determine whether those documents were reasonably obtainable, because that's an exception under the statute. But I guess what burden does the petitioner have when you know that the whole issue is you have to show when you came in here to show that it's timely? Doesn't that just, in and of itself, put you on notice, put your best game forward? Put your best evidence out there? Probably in a perfect world, it does. But in an asylum proceeding where many people appear pro se, where many people are represented by attorneys who don't competently put all the evidence out there in the first place, and where, in this particular case, Mr. Singh is illiterate. I mean, the record shows that he has a fourth-grade education. He was represented by counsel at this hearing, wasn't he? He was represented by counsel. They knew that this was going to be an issue. Well, they weren't on notice of this particular issue. Not by the IAJ, but the government's attorney had put them on notice. In the pre-hearing statement, isn't that right? The government's attorney submitted the asylum officer's referral notice assessment. The government's attorney submitted a pre-hearing statement. Isn't that right? Yeah, the government's attorney did do that. And in that statement, didn't the government's attorney clearly identify the timeliness issue? Yes. So they knew it was going to be an issue. Yeah, but they could very well have thought that with testimony, with credible testimony, that Mr. Singh could have met his burden. But they were on notice, though, in this particular case. They weren't on notice of the need to corroborate that particular evidentiary. They were on notice that this was going to be an issue that had to be resolved. They were on notice that that was an issue. Presumably, the lawyer knew it had to end to show by clear and convincing evidence. Yes, I think that's accurate. It says that the asylum officer specifically says that the applicant did not provide any documentary evidence of his presence in Canada when he was entering the United States. I mean, specifically pointed to the absence of documentary evidence. The asylum officer did. But, I mean, the rest of the paragraph is devoted to a discussion of his credibility, and, in fact, essentially makes an adverse credibility finding, saying that he didn't discuss either going over bridges or through tunnels when an asylum applicant or someone who had gone that route would ordinarily have done so. So, I mean, because so much of that assessment addressed the testimony, I think that you could just as easily have discerned that the issue was his testimony. So, if you put out something before a trial and said, bring your best case and bring all your evidence, does that put someone on notice? Not in an asylum proceeding, I don't think, no. Pardon me, counsel. It turns out that the immigration court practice manual regarding conduct of hearing says, while the immigration judge decides how each hearing is conducted, parties should be prepared to make an opening statement, raise any objections to the other party's evidence, present witnesses and evidence on all issues. So it's showtime. Well, I think that's similar to what Judge Callahan said, you know, put your best case forward. But I think that in a particular... Put your best case forward. Put all your case forward. Right. But in a case like this where there's so many different evidentiary points that might come up and where the immigration judge has a particular responsibility to ensure that all available evidence is provided, I think the immigration judge has a different burden. Thank you. We'll hear from the government. Good afternoon, Your Honors. May it please the Court. John Blakely on behalf of the Respondent and Attorney General of the United States. Your Honors, the ultimate question here is whether the statute requires this three-step notification process. Can I ask an initial question? Does the government concede that this issue of notice has been exhausted before the BIA so that we have jurisdiction and it shouldn't go back to the BIA in the first instance to parse this statute in SMJ? No, Your Honor. As we argued in a supplemental brief, this issue has not been exhausted before the Board. Can you speak a little louder? Yes, Your Honor. This issue has not been exhausted before the Board. It was not raised properly before the Board, and the Board did not address the issue. But the Board raised the whole issue on cooperation. Isn't that correct? No, Your Honor. That's not correct. I understood the IJ's opinion like Judge Graber has been referring to it. That is, cooperation wasn't an issue before the IJ. Well, I would disagree with that, and please allow me to explain why I disagree with that. The immigration judge addressed the heightened standard here of clear and convincing evidence and said that Mr. Singh failed to meet that standard. And implicit in that standard is the requirement, well, not implicit, it's actually in the statute, is a requirement that the alien provide corroboration where it's available. I don't understand that those two things are the same at all. You can have tons of corroboration and still not have it be clear and convincing, and conversely, you can have just the person's testimony and it could be clear and convincing. I think they seem to be separate in that. Well, they're separate. You're right. They are separate to the extent that they're both something that the trier fact needs to weigh. The trier fact listens to the testimony, weighs that testimony, pulls in all the corroboration that was presented and any other evidence that's provided from either side and weighs that in making the clear and convincing determination. I want to step back though to Section A. I don't even know why Section B applies at this stage of the proceedings because all we have here is something preliminary. We have under Section A, it's your authority to apply for asylum. You need to meet this timeliness rule. Right. So my question is, and that says clear and convincing, that's just all it says. It's a normal standard of review for the immigration judge. Why wouldn't that be end of story, whether it was clear and convincing? And you don't even go into B, which talks about establishing being a refugee under these five categories of nationality, religion, race. They're not actually connected. Well, the clear and convincing standard defines exactly what is required to prove that specific item. The question then becomes whether burden of proof also involves corroboration. And with the REAL ID Act, Congress made very clear that it does apply in all situations. And it provides Where does it, how does, where did Congress say that B applies to A? It did not say that it did not apply to, that it does not apply to A. I just think you're making your case harder, is all I'm saying. Here you've got us interpreting a whole other statute that we might not need to interpret for this case. Well, either 1158B1B2 or 1229AC4B applies. Either one of those two applies. It really doesn't matter which one. Effectively they're the same standard. Although you could argue that C4B They relate to whether you meet the requirements to be a refugee, the substantive requirements, whether you have other relief available under C4B, that you import those into A. That's the government's position? I don't think, I wouldn't refer to it as importing the requirement in. Maybe you're just not relevant for this decision. I mean, you just have to decide, is it clear and convincing one way or the other. But then the question becomes, does an alien's failure to corroborate inform the decision? Does that affect whether or not they've met their standing of clear and convincing evidence? And that answer to that may be unrelated to what a statute says. It doesn't relate to that. Well, Congress in the Real ID Act said that it was important to consider, that it was important to place a burden on the alien to corroborate, to provide their evidence. Congress was tired of fraud in the asylum process. And so said, we're going to place this requirement in 101A on asylum, in 101B on withholding of removal, and with 101C for all other forms of relief and protection. And they put the other forms of relief and protection into 1229AC4B. There are different facts. If you look at the substance of an asylum or withholding claim, they have to do with facts many miles away, often events that take place in a different language far from our jurisdiction. Whereas the eligibility requirement up front is really sort of different. They're more like the kind of facts we see in court cases all the time. I have a question. I'm wondering if you could elaborate on what happened here in the United States fairly recently. That's correct, Your Honor. So why would this corroboration thing that you're talking about, that was put in the substantive part, apply to those kind of facts,  Well, I'm arguing that it's either one or the other. Congress didn't carve out the timeliness determination for filing an asylum application and identify it as a separate factual determination. Well, in a funny way, they did. I'm going to use this term substitute loosely, but with respect to the merits of the material elements of the actual claim to be a refugee, there is this opportunity to demand corroboration. But there's no heightened burden of proof. By contrast, with the timeliness, there's a heightened burden of proof. And they don't seem to be crossing, cross-pollinating. They are essentially substitutes for one another in the two different contexts. At least that's how I read it. I don't think I would see them as completely separate, and this is why. With withholding of removal, the standard for withholding of removal is a preponderance of the evidence or clear and convincing evidence. And so they apply. Those are two very different standards in the civil law, preponderance of the evidence being lower. So if it were only a preponderance, maybe we'd have a different case here. But clear and convincing is a step up from there. Well, more likely than not, there's a standard for withholding of removal. That's different from the standard for the more likely than not standard. And then you have the well-founded fear of persecution standard that you have for asylum. And then you have the clear and convincing evidence standard for the timeliness determination. And so Congress spoke to fraud in the asylum process, which included the timeliness determination and put into the statute a requirement that an alien establish their case in chief with corroboration, with whatever evidence they could present for it. And Petitioner brought up that SMJ is where the root of the requirement for corroboration comes from. And in SMJ, the board spelled out the specific requirements for the alien for government counsel and for the immigration judge. And then with footnote three in SMJ, they specifically said, although these are the expectations for how they expect immigration proceedings to work, it did not place a burden on the government. And the government's neglect to comply completely with any implication in SMJ did not mean that the alien won by default. I still don't understand. Is it your position that the BIA, the board, denied his or affirmed the IJ because there was a lack of corroboration? They affirmed the immigration judge's decision because the alien failed to provide clear and convincing evidence. Not because he didn't present corroborating evidence. Well, part of that determination was that there was no evidence provided that would supplement the alien's testimony here. But the BIA specifically used the word corroborate. It said the immigration judge correctly found that the respondent had failed to corroborate his date of entry with relevant documentary evidence. That's correct, Your Honor. So why isn't that sufficiently exhausting the issue that we reach it? Well, the question that was raised to the board was whether it was appropriate to require corroboration. And the board's response was that the statute allows the immigration judge to expect corroboration as part of this claim. So is that sufficiently exhaustive that it's properly required? To the extent that the question is, was could the agency appropriately require corroboration? But that's not the question that's raised here. The question raised here is not whether they could apply, but how they specifically applied at this place. And Petitioner is arguing that there's a three-step notification process that is required by statute. And the agency has used this three-step notification process. And as counsel pointed out in the 20HA that was submitted earlier this week, there's even a board decision where the board says this is a pretty good idea to use this process at times. But that does not translate to a requirement, a statutory requirement, that in every case they use this three-step notification process. No, but the statute does speak sequentially. And that's what I'm having trouble with on this. Assuming that either of these two sections applies to justify corroboration, and I think that was the focus of the BIA's determination, the sequence is to say explicitly in the statute the testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, persuasive, and so on and so forth. Then it says where the trier of fact determines that the applicant should provide evidence that corroborates, such evidence must be provided. Those are speaking to, A, whether the IJ can require corroborated evidence, but it also statutorily says that without corroborated evidence, if the trier of fact is willing to accept the story in all its aspects as credible, then corroborated evidence isn't necessary. Now, it's all very nice to say that as good trial lawyers we put our best case forward and we do all of that. But the statute provides the petitioner with the opportunity to meet his burden on his testimony alone without anticipating what the trier of fact may find when he doesn't have, in this case, when all he's got is a letter showing that he was in India in August and he doesn't have anything else. And SMJ says that the immigration must ensure that the applicant's explanation is included in the record. So that contemplates that the BIA, plus what you just said about the good process of encouraging the process of providing a continuance, is consistent with the notion that at least there are two steps. That is, the applicant can risk for whatever he does that he provides the evidence on his testimony. Then the IJ simply has to advise him that he's going to have to corroborate it. And if he can't, SMJ says his explanation has to be in the record. Now, I have a lot of trouble with us spending all of this time trying to tease in and out of this statute this notice process when it hasn't been presented to the BIA. I don't know why we should be interpreting and straining to interpret this if it hasn't been presented to the BIA. So with all of that, what would you recommend, that we simply erase all of this and say, too bad, somebody else is going to have to bring the issue up, or should we remand to the BIA to clarify this issue of notice, or what? Your Honor, the most appropriate mechanism, as we argued, this issue has not been exhausted for the Board. The Board did not address the requirement for a three-step process. The most appropriate mechanism would be for the panel to reissue a decision not addressing, leaving out the discussion of this unexhausted issue. The panel should deny the petition for review. They properly denied it in the first instance. The only way to do that, though, to deny it outright, is to agree that the Board made no legal error in reasoning that the IJ could demand corroboration. The IJ didn't, in fact, do that, so that's, I suppose, another source of potential error. But the issue is not within the court's jurisdiction. The issue was not exhausted by the agency. As a couple of the judges— But that doesn't make sense because the BIA raised the issue itself, so we wouldn't be interpreting it. Let me backtrack. If there is no corroboration requirement that applies then at all to this situation, then the Board was wrong as a matter of law, but we wouldn't be interpreting the corroboration requirement because it wouldn't apply. The question here is not whether there is a corroboration requirement. It's undisputed that there's a requirement for corroboration. Petitioner has not argued that there's not a corroboration requirement. The question is whether the statute requires a three-step notification process, and that specific question was not raised before the agency, in fact, was not raised until oral argument. And if it were raised, what is the government's answer? I'm sorry, sir? If it were raised, or if we look at it and we disagree with you on the question of whether it was properly raised and we determine that it was raised. The government's position, Your Honor, is that the statute requires no three-step notification process. What does that sentence that Judge Gray was talking about reading and we've been discussing back and forth, the one that says the petitioner must provide corroborating evidence if the I.J. determines that it's necessary. It determines that he should. What does that sentence mean to you? To me it means nothing at all. I must tell you, I am able to derive no meaning whatsoever. I agree it's not a well-drafted statute, Your Honor. Courts are not in the habit of telling Congress nonsense. Well, to figure out what this is. So what would we say it means? Well, the only question we need to ask is whether it requires the three-step notification process. Can you explain what are the three steps? I'm losing. What are the three steps? To identify first whether or not the alien is method burden proof without providing corroborating evidence and then identifying what that evidence would be and providing the alien the opportunity to provide that. And if they don't provide it, explaining why they were unable to provide it. And there are various versions of those three steps. But in essence, those are the three steps. And so I think it's important to read the statute in context and read it within the statutory scheme and also look at the legislative history and not simply ask. If you look at the verb tense, can you do this sequence without providing the opportunity? And if you look at the context here, Congress established an assignment provision, 8 U.S.C. 1158, and they provided broad authority for the agency to adjudicate assignment applications to the extent that they provided something specific there. They actually restrict the agency's ability to restrict asylum eligibility as opposed to expanding that eligibility. They put an asylum, a timeliness determination in. They decided you can't provide asylum to terrorists and to persecutors. And they provide. Rather than getting off on all that, which doesn't relate to the case, let me try a different line because there is some ambiguity here. And you suggested that the BIA's language, too, may not be so clear. When I go back to page 3, which the BIA refers to as saying that the IJ. Page 3 of. Page 3 of the IJ's decision. IJ's decision. I'm sorry. Yes. I just want to be on the same page. The BIA refers to and says that the immigration judge correctly found that he had failed to corroborate asylum. And it goes back to 3. I really wonder whether the IJ, if we really read this clearly, ever required any corroboration. Because what the IJ seems to say, what he seems to say up above, he says the respondent testified. And he says what he testified. And then he says, in essence, he snuck across the border. He admits he has no documentation about A, B, C, and D. You know, when he came in, when he came out. Well, saying somebody admits that they have no such documentation to me is not the same as saying you must provide documentation. Isn't the IJ simply saying his testimony and his statement is he has no documentation. Then the IJ goes on to say that here's the standard of review. Clearly based on the receipt date on his application and his testimony, his evidence isn't clear and convincing. So my question is, are we kind of off on a red herring? And maybe the BIA thought corroboration was required by the IJ. But, in fact, the IJ didn't even require corroboration. The IJ just said, here's the state of the evidence. I'm taking it as I find it. It just didn't get up to that clear and convincing game over application freedom. It's true, Your Honor, that the immigration judge did not cite to the statute explicitly. But that's why the board placed the immigration judge's decision in context and said this statute, this is what the immigration judge was doing. When the immigration judge said there is no evidence. Maybe they misspoke. We're not talking past each other here. Because the immigration judge doesn't say pony up some more evidence. You need corroboration. I think what the immigration judge is saying is, based on the testimony, he is saying there are no documents. And that's kind of a statement of fact. I'm finding, based on his testimony, he says there aren't any such documents. So there's a little difference between, I think significant, between the IJ saying pony up documents and you need corroboration versus you just told me you don't have any documents. And I'm going to just actually put that in my opinion. So I'm just wondering whether the BIA got off slightly in interpreting the decision. And maybe there really never was any corroboration even required. And we don't even need to reach that issue. Well, Your Honor, that argument was never raised. It hasn't been raised to this court. To the extent that that was an error that, hypothetically, let's assume that was an error that the board made here, the appropriate venue to raise that argument is a motion to reconsider with the board. Well, it doesn't get him anywhere. It's inconsistent with petitioner's argument that there was corroborating evidence in the form of the document that showed he was in a different part of India. Your Honor, the IJ cited to that on page 77 of the administrative record. The IJ cites that specific letter. The immigration judge knew that letter was there. What the immigration judge says is there's no evidence of the entry date. And that was the important date to establish. See, I think you're fighting too hard for something where the record. I think because we ask you a question, we're disagreeing with you. What I'm saying is maybe the issue is that in our review of this, we've gone down this road of the corroboration. And maybe you have to read that in connection with the IJ's decision, which doesn't actually require corroboration. But it's the board. The board decision is the ultimate decision here. And that's what I'm defending here today. It explains that that's what the immigration judge was doing. And to the extent that there was error there, the appropriate venue is a motion to reconsider. What it actually says is it's okay for the IJ to have done this. Certainly. But if Judge McEwen's reading is correct, that the IJ didn't do it, the fact that the immigration board says it was okay for him to do it, doesn't really have any bearing. They can say it. But if he didn't in fact do it, it's not like they're proving something that actually happened. They're proving something that didn't happen. And in that case, we could look at the decision and say that part of the decision really has no bearing at all. It just drops out. And you're just left with the decision that they said it was clear and convincing, but he didn't win. And to the extent that the only issue here is whether or not the alien established by clear and convincing evidence is entry date, then this court would lack jurisdiction to address that specific question. But if you have a fair reading of saying that you have no documentation, the same as saying you don't have any corroboration, why wouldn't that be a fair reading of what the IJ said? It may not be the only reading, but why wouldn't that be a fair reading of what the IJ was saying? That's what I see the board decision is doing, Your Honor, if I understand you correctly. Thank you. I believe you're out of time, but if you wish to take it. I just wanted to address one point, and that's Judge McKeown's point. I think that the government argued that it's implicit in the immigration judge's decision that he required corroboration. And I just don't think that, first of all, an immigration judge can make implicit findings. And secondly, there's nothing implicit at all, because it says explicitly, based upon respondent's testimony, he didn't meet his burden of proof. But I think that the other point. Let me ask you that. He didn't say that. He said he says he has no documentation. Right. So he didn't say you need to provide more or you need more corroboration. He just said, based on what you've told me, there isn't anything. He certainly doesn't say, I'm going to hold you against him that he doesn't have it. Like, you know, there's really something suspicious about the fact, and that's going to sort of impact the way I interpret his testimony. Right. I mean, that's really the way I think Judge McKeown is reading it, which is to say, it's just a statement of fact. He says, well, we deal with his testimony. He says he doesn't have anything else, so we can't look at anything else. So we're left with his testimony. Right. And I think that's his legal conclusion. His legal conclusion was based entirely on the testimony and not on any lack of corroboration. And similarly, with regards to that, why are you here? Then why are you here? Because he loses. He said, in other words, if his decision is based on the testimony and not lack of corroboration, he just didn't meet his burden. We wouldn't then have jurisdiction to review that, correct? Well, the board, we are reviewing the board. I mean, you are reviewing the board's decision, and the board did find that the claim failed for lack of corroboration. So technically, you're saying it would have to be granted and remanded to the board to look at it the way the IJ looked at it, as an absence of clear and convincing evidence instead of a lack of corroboration, and then they would presumably make a decision on that. They could, or they could make their own. I mean, you could also, I guess, read the board's decision as making their own independent finding, apart from the immigration judge, that he failed to corroborate his claim. Though, I mean, the language of it doesn't necessarily support that. It's apparent that the board read this as the IJ saying there was a lack of corroboration, because it said the IJ is correct in determining that there was a lack of corroboration. I think that that's the way the board read it, but I think a fair reading of the immigration judge's decision doesn't apply to that. Okay, thank you. This court for this session stands adjourned.
judges: Kozinski, O'scannlain, Graber, McKeown, Fisher, Gould, Paez, Rawlinson, Clifton, Callahan, Bea, Cjj